# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 5702 | **DATE** | 4/20/2001 |
| **CASE TITLE** | Santelli vs. Electro-Motive | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the motion to reconsider is denied, and Electro-Motive's motion to certify issues for appeal is denied

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | APR 23 2001 date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office — date mailed notice — mailing deputy initials |

Document Number

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARY C. SANTELLI )
)
    Plaintiff, )
)
v. ) Case No. 97 C 5702
)
ELECTRO-MOTIVE, a division of )
GENERAL MOTORS CORP. )
)
    Defendant. )

DOCKETED APR 23 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On March 29, 2001, this Court granted defendant's motion for summary judgment in part and denied it in part in a Memorandum Opinion and Order ("Opinion"). Specifically, this Court found that a trier of fact could reasonably infer that Electro-Motive Division (EMD) had intentionally discriminated against Mary Santelli because of her gender in the Fall of 1995. We granted summary judgment for the defendant on Santelli's retaliation claims, as well as certain sex discrimination claims relating to training and testing in 1994. EMD has filed a motion to reconsider. Familiarity with the Opinion is assumed.

## DISCUSSION

Motions for reconsideration are appropriate only in very rare circumstances, such as when the Court has made a manifest error of law or fact. *See Keene Corp. v. International Fidelity Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill. 1982), *aff'd on other grounds*, 736 F.2d 388 (7th Cir. 1988). A further basis for an appropriate motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. *Bank of Waunakee v. Rochester*

1

*Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

In its motion, EMD does not argue that the standards set forth in *Keene* or *Bank of Waunakee* demand reconsideration of the Opinion. It merely rehashes arguments made before and raises irrelevant new arguments. EMD zeroes in on the Santelli's prima facie burden under the *McDonnell Douglas* framework for the three claims on which we denied summary judgment. Those concerned the October 1995 RIF that transferred Santelli from Department 7013 to Department 7021 (transfer claim), Supervisor Tony Roberts' assignment of her to B-29 welding (work assignment claim), and the resulting Red 618 removal from welding entirely (removal claim). While this Court's Opinion addressed each of those claims separately, they should not be viewed in total isolation from one another. Santelli's essential complaint is that EMD set her up for a fall. According to Santelli, the October RIF was a "sham," Roberts intentionally assigned her to a specific work assignment she couldn't do, and when she encountered difficulties the company promptly banned her from any welding position. Accordingly, this Court's analysis of whether a particular action was an adverse employment action, whether similarly situated male employees were treated more favorably, or whether Santelli was qualified cannot be divorced from the totality of Santelli's complaint and the circumstances of this case.

EMD's first argument is that Santelli's transfer claim cannot constitute an adverse employment action. In the Opinion, this Court cited *Collins v. Illinois*, 830 F.2d 692, 703 (7th Cir. 1987), for the legal standard that an adverse employment action need not involve pay or benefits. EMD does not show that decision to have been overruled such that a significant change in the law has taken place.[1] Rather, EMD cites to the non-binding case law of other circuits, as well as

---

[1] In fact, numerous opinions have approvingly cited *Collins*. *See, e.g., Knox v. State of Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996) (noting that moving an employee "from a spacious,

2

unpublished orders of the Seventh Circuit.[2] As those cases are not binding, we decline to address them.

However, EMD does cite to *Tyler v. Ispat Inland, Inc.*, a Seventh Circuit decision published just after the Opinion. *See* No. 00-2279, -- F.3d --, 2001 WL 355663 (7th Cir. April 5, 2001). *Tyler*, however, does not represent a significant change in the law. The court of appeals noted that a "lateral transfer of an employee who retains the same salary and benefits is not, *without more*, sufficient to constitute an adverse employment action." *Id.* at *3 (emphasis added) (citing *Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). We disagree with EMD's assertion that *Tyler* stands for the proposition "that a transfer from one plant to another plant is not actionable, even where plaintiff argued that the job at one plant involved different equipment." In the factual analysis, the court of appeals agreed with the district court that the plaintiff had not shown anything more than a transfer. *Tyler* at *3. In this case, transfer to Department 7021 would necessarily entail assignment to B-29 welding work routinely assigned to new welders. Santelli showed that a reasonable trier of fact could infer from the evidence that her transfer to Department 7021, although it involved no change in pay, constituted a material, adverse alteration in the terms and conditions of her employment. Furthermore, the "question whether a change in an employee's job or working conditions is materially adverse, rather than essentially neutral, is one of fact . . . and so can be

---

brightly lit office to a dingy closet" could constitute an adverse employment action); *Fortier v. Ameritech Mobile Communications.*, 161 F.3d 1106, 1111 (7th Cir. 1998) (observing that adverse job actions can include changes that do not involve quantifiable losses in pay or benefits).

[2] *See, e.g., Biggs v. Lincoln Nat'l Life Insurance Co.*, Nos. 97-3230 & 97-3252, 1998 U.S. App. LEXIS 21654 (7th Cir. Aug. 31, 1998). The Court notes that such citations are in violation of Seventh Circuit Local Rule 53(b)(2)(iv): "Unpublished orders . . . shall not be cited or used as precedent: (A) in any federal court within the circuit in any written document or in oral argument."

3

resolved on summary judgment only if the question is not fairly contestable." *Williams*, 85 F.3d at 274-75 (citation omitted). In this case, the question is fairly contestable.

EMD's next claim is that this Court applied the wrong legal standard in determining whether similarly situated male welders were treated more favorably than Santelli. Here, EMD is seeking to make arguments that it could have made in its summary judgment briefs, such as its assertion that the "class of similarly situated employees should properly be limited to those *sharing the same supervisor, in the same department, and subject to the same standards* as the plaintiff." Motion to Reconsider at 6 (emphasis in original). Most defendants would no doubt prefer a requirement that the plaintiff find a fraternal twin employee whose experience, conduct, and position are identical in each and every aspect to hers, but the law simply does not support such a slanted view of the indirect method of proof.[3] It suffices to say in this case Santelli's has provided evidence from which a jury could conclude that male welders who held the same welding code as Santelli and worked in the same department were treated more favorably in that they were not transferred. EMD now wants to focus on the fact that those male welders worked on a different shift for a different supervisor, but in its motion for summary judgment it consistently articulated EMD's policy of transferring employees in a RIF based on plant-wide seniority in *each department*, not on each shift of each department.[4]

---

[3] "If the test is to work - and our antidiscrimination laws are to have an effect on more than the most egregious and obvious discrimination - courts should neither narrow *McDonnell Douglas*'s application such that no one is similarly situated, nor broaden its application such that no one is disparately treated." *Allen v. Muriello*, 217 F.3d 517, 522 (7th Cir. 2000) (reversing a grant of summary judgment for the defendant).

[4] Related to this claim is EMD's argument that this court "glossed over the importance of the four male welders (Taylor, Reason, Bumpers and Grant) transferred out of Department 7013 at the same time as the Plaintiff." EMD is simply rehashing arguments already rejected by this

4

The next section of EMD's motion to reconsider addresses the work assignment claim. EMD makes an argument regarding pretext, an element that is not required as the Opinion relied on the direct method of proving intentional discrimination, specifically Roberts' comments to Santelli. *See* Opinion at 19. EMD's argument that the work assignment was not an adverse employment action is not persuasive for the reasons noted above. Furthermore, EMD does not present significant changes in controlling law (in fact, it once again cites to unpublished orders of the Seventh Circuit in violation of Seventh Circuit Local Rule 53(B)(2)(iv)).

With regard to the removal claim, EMD attacks this Court's conclusion that a reasonable trier of fact could infer that removing Santelli from welding constituted intentional sex discrimination. Specifically, EMD recycles the arguments made in the first section of this motion relating to the similarly situated element of Santelli's prima facie case. EMD cites *Thompson v. John J. Madden Mental Health Center*, 99 C 2558, 2000 WL 1780348 (N.D. Ill. Dec. 4, 2000) (Kennelly, J.), as support for a rule that requires female plaintiffs to show that their exact supervisor treated male employees more favorably. However, that Opinion dealt with factual circumstances "where it appears that the [employer] did not have a uniform practice or policy governing supervisors' disciplinary decision-making," *id.* at *3, and merely noted that the "Seventh Circuit has *suggested* that decision-makers should be identical for purposes of comparing similarly situated employees at the prima facie stage." *Id.* (emphasis added). In Santelli's case, a formalized disciplinary process in a unionized workplace was allegedly applied more leniently to male welders. Santelli was not moved to a different welding assignment; she was removed from welding entirely. Based on the record now before the Court, a reasonable trier of fact could infer that the Red 618 procedure was

---

Court, *see* Opinion at 21-22, and citing authority already distinguished. *Id.*

5

applied more harshly to Santelli because of her gender.

EMD also asserts that Santelli's removal claim fails because she was not qualified. But as this Court stated in its Opinion, Santelli worked for many months as a W51 welder after a committee of supervisors decided that Santelli could continue regardless of her inability to lift the loading wire. And her removal was from welding altogether, not just the B-29 work assignment, so her alleged deficiencies in that position are irrelevant.

EMD's final argument relates to a brief reference in the Opinion's statement of facts to an alleged statement made by Supervisor McGrew as he handed Santelli a broom. Regardless of when the statement was made, it was not a factor in this Court's legal analysis.

## CONCLUSION

The motion to reconsider is denied. "This Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure. Motions such as this reflect a fundamental misunderstanding of the limited appropriateness of motions for reconsideration." *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). EMD has also requested that the Court to certify for interlocutory appeal under 28 U.S.C. § 1292(b) the matters argued in this motion. Given that this case is far from one that presents "substantial ground for difference of opinion about a controlling question of law," EMD's motion to certify issues for appeal is denied.

Dated: April 20, 2001

MATTHEW F. KENNELLY
United States District Judge